IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SOUTH EAST ENTERPRISE GROUP        *
LLC, *et al.*,
                                   *
     Plaintiffs,
                                   *
vs.                                          CASE NO. 4:15-cv-25 (CDL)
                                   *
JOHN GILL, *et al.*,
                                   *
     Defendants.
                                   *
_____
                                   *

O R D E R

This action is the third in a series of civil cases before this Court involving the same main characters fighting over the Gill Family Cornerstone Trust enterprise, built by John Gill. Before the fighting began, John Gill amassed an empire of rental properties, took a vow of poverty, placed the properties into holding trusts that benefitted the Cornerstone Trust, and continued to manage the properties (and derive benefit from them) with the help of Kevin Hartshorn and Dan Van Gasken. But then John Gill was convicted of crimes in Florida, and he fled the country instead of reporting to prison. The power vacuum created by John Gill's absence pitted Hartshorn and Van Gasken against John Gill's brother Loren. They have been fighting in this Court ever since, most recently filing this third separate lawsuit. Contending that this latest action is nothing new, Defendants seek judgment on the pleadings based on *res judicata*.

In the first action, Eastern Property Development, LLC and South East Enterprise Group, LLC v. Loren Gill, 4:11-cv-62 ("Trespass Action"), Eastern Property and SEE, which are managed by Hartshorn and Van Gasken, accused Loren of breaking into their offices, changing their locks, diverting their funds to his bank account, and generally meddling with their operations during the summer of 2011. Eastern Property and SEE brought claims against Loren Gill for trespass, conversion, and interference with contractual relations. In September 2012, a jury found in favor of Eastern Property and SEE and against Loren Gill on those claims.

In the second action, Kaitlyn Gill and Lauren Gill v. Loren Gill and Elm Leasing, LLC, 4:12-cv-77 ("Elm Leasing Action"), John Gill's daughters—Kaitlyn and Lauren, who were beneficiaries of the Cornerstone Trust—formed an alliance with Van Gasken, trustee of the real estate holding trusts that benefit the Cornerstone Trust, against their uncle Loren. They accused Loren of working with John Gill to divert Cornerstone Trust assets to Loren's own company. The Gill daughters brought claims against Loren under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964. Van Gasken did not assert RICO claims in that case. Rather, Van Gasken brought a conversion claim against Loren Gill on behalf of the real estate holding trusts. In September 2014, a jury

found in favor of Van Gasken on his claim against Loren Gill.
And the jury found that while Loren Gill engaged in a pattern of
racketeering activity, that pattern of racketeering activity
caused $0 in damages to the Gill daughters.

In the present action, Plaintiffs SEE, Eastern Property,
Hartshorn as trustee of the Cornerstone Trust, Van Gasken as
trustee of the real estate holding trusts, Order of the IAL,
Inc., and Multi Marts Corp. square off against Defendants John
Gill, Loren Gill, Michael Gill (John and Loren's brother), PMCA,
LLC (a company the Gill brothers control), and Steve Thomas.
Plaintiffs allege a federal RICO claim against Defendants,
claiming that Defendants formed an enterprise in 2011 and, using
the U.S. mail and interstate wire communications, have engaged
in a fraudulent scheme to deprive Plaintiffs of money and injure
their business. Am. Compl. ¶¶ 37, 68, ECF No. 23. Based on the
same allegations, Plaintiffs also assert state law claims for
interference with contract and interference with a prospective
business advantage.

Defendants seek judgment on the pleadings, arguing that all
of Plaintiffs' claims are barred by *res judicata*. Defendants
alternatively seek dismissal of Plaintiffs' RICO claims for
failure to state a claim and Plaintiffs' failure to comply with
the Court's rules regarding RICO claims. As discussed below,

Defendants' Motion for Judgment on the Pleadings (ECF No. 34) is granted in part and denied in part.

## JUDGMENT ON THE PLEADINGS STANDARD

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation marks omitted). "In determining whether a party is entitled to judgment on the pleadings," the Court must "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." *Id.*

## FACTUAL ALLEGATIONS

Plaintiffs base their claims in the present action on Defendants' alleged conduct during two main timeframes: 2011 and 2015. Plaintiffs allege that during 2011:

1. Loren Gill forged papers stating that he was a trustee of the real estate holding trusts managed by SEE and Eastern Property, then sent those papers via interstate wire communications. Am. Compl. ¶ 49.

2. Relying on the forged document stating that he was a trustee of the real estate holding trusts, Loren Gill sent an interstate wire communication purporting to fire Van Gasken from his role as trustee. *Id.* ¶ 50. Loren Gill also used the forged documents to assume management of SEE and Eastern Property. *Id.* ¶ 51. He also opened a bank account in Columbus, Georgia so that he could divert money to himself from SEE and Eastern Property, and he used the interstate wires to divert the funds. *Id.* ¶¶ 52-53.

3. Loren Gill filed a fraudulent Notice of Claim of Ownership in the Muscogee County, Georgia Superior Court stating that Loren Gill was the president of Multi Marts and that Van Gasken had never owned any Multi Marts stock, then caused the notice to be sent via U.S. mail. *Id.* ¶ 54.

4. Loren Gill made an affidavit falsely stating that he was a trustee of the real estate holding trusts, then filed it in the Muscogee County, Georgia Superior Court and caused it to be sent via U.S. mail. *Id.* ¶ 55.

5. Loren Gill created a fraudulent deed purporting to transfer property owned by Van Gasken to himself, then caused the deed to be mailed via U.S. mail and to be recorded in the County Recorder's Office in Pierce County, Washington. *Id.* ¶ 56. He also filed a lien on the property. *Id.* ¶ 57.

6. Loren Gill filed a false statement in this Court swearing that he was a trustee of the real estate holding trusts when he knew he was not. *Id.* ¶ 59.

7. John Gill induced Loren Gill to threaten to injure Plaintiffs' property. *Id.* ¶¶ 35, 61.

8. Loren Gill sent a letter via U.S. mail to every SEE and Eastern Property tenant instructing the tenants to pay their rent to his company, even though his company had no authority to receive the payments. *Id.* ¶ 64.

Plaintiffs allege that during 2015:

1. Defendants forged Van Gasken's letter of resignation from his position as trustee of the real estate holding trusts and caused it to be sent through the U.S. mail and to be recorded in the Muscogee County, Georgia Superior Court, creating an encumbrance on all properties held by those trusts. *Id.* ¶ 40.

2. Defendants forged Hartshorn's resignation from his position as trustee of the Cornerstone Trust and caused it to be sent through the U.S. mail and to be recorded in the Muscogee County, Georgia Superior Court, then sent an "acceptance" of Hartshorn's resignation via interstate wire communication. *Id.* ¶¶ 41, 43.

3. Defendants forged Van Gasken's signature on a purported mortgage securing a purported debt owed by one of the real estate holding trusts to Elm Leasing, which is Loren Gill's

company, and caused it to be sent through the U.S. mails and to be recorded in the Lee County, Alabama Recorder's Office.  *Id.* ¶ 42.

4. Defendants forged a quitclaim deed purporting to convey properties from the Order of the IAL to an entity owned by John Gill, then they caused it to be sent through the U.S. mail and to be recorded in the Muscogee County, Georgia Superior Court, creating an encumbrance on those properties.  *Id.* ¶ 44.

5. Defendants forged a quitclaim deed purporting to convey properties from Multi Marts to an entity owned by John Gill, then caused it to be sent through the U.S. mail and to be recorded in the Muscogee County, Georgia Superior Court, creating an encumbrance on those properties.  *Id.* ¶ 45.

6. Defendants sent a letter via U.S. mail to tenants of SEE and Eastern Property, directing that all future rent payments be directed to PMCA, LLC.  *Id.* ¶¶ 46-47.

7. Defendants forged a transfer assignment document that purported to transfer ownership of 50,000 shares of Multi Marts stock from Van Gasken to John Gill and sent the document via interstate wire communication.  *Id.* ¶ 48.

Plaintiffs contend that each one of these actions is a separate predicate act within the meaning of RICO and that these acts proximately caused injury to their business and property. *Id.* ¶ 68.   Plaintiffs acknowledge that they are not seeking damages for the conversion the jury found in the Elm Leasing Action; these facts are simply offered in support of Plaintiffs' allegation that Defendants engaged in a pattern of racketeering activity.  *Id.* ¶ 25 n.2.

DISCUSSION

Defendants argue that the present action involves essentially the same claims asserted by the same parties in the

previous Trespass and Elm Leasing Actions.  Defendants therefore
maintain that this action is barred by *res judicata*.[1]  Defendants
also contend that Plaintiffs' RICO claim must be dismissed even
if it is not barred by *res judicata* because Plaintiffs'
allegations do not support that claim and because Plaintiffs did
not comply with the Court's local rules regarding RICO claims.
The Court first addresses Defendants' *res judicata* defense.

> A.   Res Judicata

"*Res judicata* bars the filing of claims which were raised
or could have been raised in an earlier proceeding." *Ragsdale
v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).
"Under Eleventh Circuit precedent, a claim will be barred by
prior litigation if all four of the following elements are
present: (1) there is a final judgment on the merits; (2) the
decision was rendered by a court of competent jurisdiction; (3)
the parties, or those in privity with them, are identical in
both suits; and (4) the same cause of action is involved in both
cases." *Id.*  It is undisputed that there was a final judgment
on the merits rendered by a court of competent jurisdiction in
the Trespass and Elm Leasing Actions.  Plaintiffs maintain,
however, that neither the parties nor the claims in the previous
actions are the same as those in the present action, and

---

[1] Defendants do not argue that Plaintiffs' claims are precluded by the
related principle of collateral estoppel.

therefore, *res judicata* does not bar their present claims.   The Court must therefore determine whether the same parties are involved, and, if they are, whether the same claims are being asserted.   The Court applies the following principles to make this determination.

In determining whether the same parties are involved, the general rule is that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (internal quotation marks omitted).   There are several exceptions to this general rule.   A nonparty may be bound by a judgment if "a substantive legal relationship existed between the person to be bound and a party to the judgment." *Id.*   A nonparty may also be bound if "the nonparty was adequately represented by someone who was a party to the suit." *Id.*   And a nonparty may be bound if the nonparty agreed to be bound by the prior litigation, if "the nonparty assumed control over the litigation in which the judgment was issued," if "a party attempted to relitigate issues through a proxy," or if "a statutory scheme foreclosed successive litigation by nonlitigants." *Id.*

Upon determining that the same parties are involved in both actions, the Court must next decide whether the same claims are

being asserted.  If an action "arises out of the same nucleus of
operative facts, or is based upon the same factual predicate, as
a former action, . . . the two cases are really the same 'claim'
or 'cause of action' for purposes of res judicata."  *Griswold*,
598 F.3d at 1293 (alteration in original) (internal quotation
marks omitted).  Guided by these principles, the Court compares
the claims asserted in the present action with those in the
previous Trespass and Elm Leasing Actions.

     *1.   The Barred Claims*

         a.   EASTERN PROPERTY AND SEE CLAIMS AGAINST
              LOREN GILL IN TRESPASS ACTION

Plaintiffs allege that Loren Gill relied on forged
documents to assume control of Eastern Property and SEE during
2011 and to divert Eastern Property and SEE funds to his own
account.  Am. Compl. ¶¶ 49-53.  These are the facts that Eastern
Property and SEE relied on to establish their claims in the
Trespass Action.  Plaintiffs appear to concede that Eastern
Property and SEE cannot recover damages from Loren Gill for this
conduct because they already received a judgment against him in
the Trespass Action.  So, to the extent that Eastern Property
and SEE intend to assert additional damages claims against Loren
Gill for that conduct, those claims are barred.  But this does
not necessarily mean that Eastern Property, SEE, and other
parties may not rely on evidence of Loren Gill's conduct to

establish a pattern of racketeering activity.  It simply means that *res judicata* bars Eastern Property and SEE from re-litigating their Trespass Action claims against Loren Gill.

        b.   VAN GASKEN'S RICO CLAIMS AGAINST LOREN GILL BASED ON ELM LEASING ACTION FACTS

Van Gasken, in his capacity as trustee of the real estate holding trusts, received a judgment against Loren Gill on his conversion claim in the Elm Leasing Action, so *res judicata* obviously bars him from re-litigating that claim.  Plaintiffs acknowledge that they are not seeking additional damages based on the conversion.  Am. Compl. ¶ 25 n.2.

Defendants also argue that Van Gasken could have brought his present RICO claims in the Elm Leasing Action.  Since the parties (Van Gasken and Loren Gill) are the same, the Court next evaluates whether the claims are the same.  In deciding whether two cases comprise the same cause of action, the Court must "line up the former and current cases side-by-side to assess their factual similarities." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1309 (11th Cir. 2010).  And in assessing the factual similarities, the Court must determine whether there is a disparity in facts and evidence needed to prove the two claims. *Id.*  For example, in *Borrero*, the Eleventh Circuit concluded that the plaintiffs' contract-based claims were not the same cause of action as the RICO claims

raised in a prior action because the evidence presented in the prior action was only tangentially relevant to the claims raised in the new action.

In the Elm Leasing Action, Van Gasken brought a conversion claim based on Loren Gill's plot to "take back" the real estate holding trust assets for John Gill. That plot began in 2005 and continued for several years. Though Van Gasken insists that the Elm Leasing Action only involved actions that John Gill and Loren Gill took between 2005 and 2009, the evidence at trial included evidence that by the fall of 2011 (well before Van Gasken filed his claims against Loren Gill in late 2012), Van Gasken knew that Loren Gill was working with John Gill to find a solution for the money problems John Gill faced while a fugitive and that John Gill had instructed Loren Gill to "burn" the whole Cornerstone Trust enterprise if he could not convince Van Gasken to send money to John Gill.

While evidence of fraud and collusion might be tangential and unnecessary in a run-of-the-mill conversion case, that evidence was essential to Van Gasken's claim in the Elm Leasing Action. Van Gasken's theory of the case was that Loren Gill colluded with John Gill to defraud him into transferring assets from the real estate holding trusts benefitting the Cornerstone Trust to Elm Leasing. Van Gasken relied on that evidence to support his claim that Loren Gill worked for years with John

11

Gill to convert Cornerstone Trust assets.  He also relied on that evidence to establish that Loren Gill fraudulently concealed the conversion; without the fraudulent concealment, Van Gasken's claims would have been time-barred.  Van Gasken did not assert his claims under a RICO theory in the Elm Leasing Action based on the Gill brothers' plot to take back the Cornerstone Trust properties for John Gill, but the Court is satisfied that he could have, as the Gill daughters did.  *Res judicata* thus bars Van Gasken's present RICO claim against Loren Gill that is based on the 2011 conduct related to the real estate holding trust assets.  To the extent Van Gasken asserts any state law claims against Loren Gill based on that 2011 conduct, those claims are likewise barred.[2]

---

[2] Defendants contend that there is sufficient identity of the parties for Van Gasken's RICO claims to be barred against all the present Defendants, who are alleged to be co-conspirators with Loren Gill. While it is true that the courts generally find that sufficient identity of parties exists between co-conspirators, that is only when the co-conspirators were at least alleged in the prior action.  *See, e.g., Powell v. Gorham*, No. 2:13-cv-0055-LSC, 2013 WL 3151632, at *11 (N.D. Ala. June 14, 2013) (collecting cases).  In the Elm Leasing Action, Van Gasken established that Loren Gill conspired with his brother John Gill to defraud Van Gasken into converting Cornerstone Trust assets.  But it was not clear in the Elm Leasing Action that Van Gasken was alleging that the conspiracy included Steve Thomas, Michael Gill, and PMCA, LLC.  So Van Gasken's RICO claim against those Defendants is not barred by *res judicata*.

As for the claims against John Gill, it is not clear that the Court could have exercised personal jurisdiction over him in the Elm Leasing Action because he was (and still is) a fugitive who lives at an undisclosed location outside the United States.  For that reason, the Court concludes that Van Gasken's RICO claim against John Gill is not barred by *res judicata*.

### 2.   Remaining Claims Are Not Barred

As to the remaining claims, the Court finds that the parties and/or the claims are different, and therefore, the claims are not barred by *res judicata*.   Defendants argue generally that there is sufficient identity of the parties and claims to bar all of Plaintiffs' present RICO claims.   They lump all Plaintiffs together, all Defendants together, and all of the basic claims together, which makes for a rather muddled analysis.   But the parties and claims cannot be painted with such a broad brush.   The Court thus endeavors to address the parties and claims separately.

####   a.   RICO CLAIMS BASED ON TRESPASS ACTION FACTS

Defendants contend that none of the Plaintiffs may pursue their RICO claims because they are based in part on the facts that gave rise to the Trespass Action.   These facts include allegations that Loren Gill relied on forged documents to assume control of Eastern Property and SEE during 2011 and to divert Eastern Property and SEE funds to his own account.   Am. Compl. ¶¶ 49-53.   Defendants contend that Eastern Property and SEE are barred from asserting their RICO claims in the present action because they could have raised them in the Trespass Action.   And Defendants appear to assert that all of the other Plaintiffs are barred from raising RICO claims based on the Trespass Action facts because SEE and Eastern Property are barred from raising

them and there is sufficient identity between the other Plaintiffs and SEE and Eastern Property. The Court concludes, however, that Eastern Property and SEE are not barred from asserting their RICO claims in the present action, including any claims based in part on the facts underlying the Trespass Action, so none of the other Plaintiffs are barred.

Again, *res judicata* bars only claims that "were raised or *could have been raised* in an earlier proceeding." *Ragsdale*, 193 F.3d at 1238 (emphasis added). In the Trespass Action, SEE and Eastern Property pursued claims based on Loren Gill's conduct during June of 2011. Compl. ¶ 12, ECF No. 1 in 4:11-cv-62. It is not clear, however, that SEE and Eastern Property could have brought a RICO action based on the handful of wrongful acts Loren Gill committed during the summer of 2011. The Court granted a temporary restraining order in June 2011 barring Loren Gill from entering the premises of SEE and Eastern Property and from holding himself out as acting for either entity. Order Granting Mot. for TRO, ECF No. 14 in 4:11-cv-62. When Loren Gill later violated the TRO and the Court held a contempt hearing, he promised that he would not violate the TRO again. Hr'g Tr. 90:9-21, Aug. 30, 2011, ECF No. 31 in 4:11-cv-62.

"Essential to any successful RICO claim are the basic requirements of establishing a RICO enterprise and a 'pattern of racketeering activity.'" *Jackson v. BellSouth Telecomms.*, 372

F.3d 1250, 1264 (11th Cir. 2004). "A pattern of racketeering activity, for purposes of the RICO Act, requires at least two acts of racketeering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006) (per curiam) (internal quotation marks omitted) (finding that plaintiffs alleged a pattern of racketeering activity because they alleged that the defendant "committed hundreds, even thousands, of" predicate acts). But "a pattern of racketeering activity requires proof of something beyond the two predicate acts themselves. That something is the threat of continuing racketeering activity." *Jackson*, 372 F.3d at 1265 (internal quotation marks omitted).

To prove a pattern of racketeering activity, there must be either "a series of related predicates extending over a substantial period of time" or "a specific threat" that the racketeering acts will extend "indefinitely into the future." *Id.* When they filed the Trespass Action, SEE and Eastern Property were aware of a handful of wrongful acts that occurred over a very short period of time, and Loren Gill promised under threat of contempt that he would not commit any more wrongful acts. Based on these facts, SEE and Eastern Property would not have been able to allege the continuity required for a RICO claim. The Court finds that SEE and Eastern Property could not have brought the RICO claim when they pursued the Trespass

Action.   *Res judicata* thus does not bar their current RICO claims.[3]   And because *res judicata* does not bar the RICO claims of SEE and Eastern Property based on the Trespass Action facts, it also does not bar any other Plaintiffs' RICO claims based on those facts (even if there were sufficient identity of the parties).

> b.   RICO CLAIMS BASED ON ELM LEASING ACTION FACTS

Defendants argue that if Van Gasken's RICO claim based on Loren Gill's 2011 conduct related to the real estate holding trust assets is barred by *res judicata*, then all of the other Plaintiffs' RICO claims are likewise barred because the remaining Plaintiffs were either parties in the Elm Leasing Action or there is sufficient identity between Van Gasken and the present Plaintiffs.   The Court finds this argument unpersuasive.

> i.   **Claims of Parties to the Elm Leasing Action**

Hartshorn was a party to the Elm Leasing Action because the original plaintiffs in that case accused him of breaching his fiduciary duty to the Cornerstone Trust.   Hartshorn brought a crossclaim seeking a declaration that Loren Gill and others were not trustees of the Cornerstone Trust.   He did not, however,

---

[3] Again, Plaintiffs do not appear to seek damages based on these facts; rather, they intend to rely on these facts to prove a pattern of racketeering activity.

assert any crossclaims for damages against Loren Gill on behalf of the Cornerstone Trust. SEE and Eastern Properties were parties to the Elm Leasing Action because they managed the properties that were at issue in that case. SEE and Eastern Properties did not assert any crossclaims against Loren Gill.

"Under Fed. R. Civ. P. 13(g), cross claims are permissive rather than compulsory and a party to an action has the option to pursue it in an independent action." *Dunn v. Sears, Roebuck & Co.*, 645 F.2d 511, 512 n.1 (5th Cir. Unit A May 1981). And, simply bringing a crossclaim does not generally require a party to bring all other crossclaims it might have had. *Answering Serv., Inc. v. Egan*, 728 F.2d 1500, 1503 (D.C. Cir. 1984). For these reasons, *res judicata* does not bar a party who decides not to bring a crossclaim in one action from asserting the claim in a later action. *Dunn*, 645 F.2d at 512 n.1. The claims of Hartshorn, SEE, and Eastern Property based on Loren Gill's 2011 conduct related to the real estate holding trust assets are thus not barred by *res judicata*.

> ii. **Claims of Order of the IAL and Multi Marts**

Order of the IAL and Multi Marts were not parties in the Elm Leasing Action. And the present pleadings certainly do not establish that there is sufficient identity between them and Van Gasken such that their claims should be barred. The pleadings

do not establish that either Order of the IAL or Multi Marts agreed to be bound by the prior litigation, that either of those entities assumed control over the prior litigation, or that either entity is just a proxy through which plaintiffs in the prior actions are attempting to re-litigate issues.   The pleadings also do not establish that either Order of the IAL or Multi Marts was adequately represented in the prior action or that a substantive legal relationship existed between those parties and the plaintiffs to the prior litigation.   Although Van Gasken is president of Multi Marts, the Elm Leasing Action did not involve Multi Marts properties, and no claims were asserted on behalf of (or against) Multi Marts.   Furthermore, Van Gasken appeared in the Elm Leasing Action in his capacity as trustee of the real estate holding trusts, not in his individual or another capacity. *See Hurt v. Pullman Inc.*, 764 F.2d 1443, 1448 (11th Cir. 1985) ("Under basic principles of *res judicata* jurisprudence, for a party to be bound by or take advantage of a prior suit that party or its privy must not only have been present in both suits, but it has to appear in the same capacity in both suits.").   In sum, the present pleadings do not reflect that Order of the IAL and Multi Marts had an opportunity to litigate any of their claims in the Elm Leasing Action. Therefore, their claims are not barred by *res judicata*.

c. VAN GASKEN'S CLAIMS ARISING FROM 2015
CONDUCT

Defendants argue that if Van Gasken's RICO claim based on Loren Gill's 2011 conduct related to the real estate holding trust assets is barred by *res judicata*, then his entire RICO claim is barred, including his claim based on Defendants' alleged conduct during 2015. In support of their argument, Defendants cite precedent from other circuits suggesting that *res judicata* bars a claim if a plaintiff could have amended his complaint to assert it before adjudication on the merits in a prior action. *See, e.g., Dubuc v. Green Oak Twp.*, 312 F.3d 736, 750 (6th Cir. 2002). In *Dubuc*, for example, the Sixth Circuit reasoned that the plaintiff could have amended his complaint to include new allegations of First Amendment retaliation that occurred before his first lawsuit was dismissed. *Id.* Because he did not, the Sixth Circuit found that the claims based on the new allegations were barred. The Sixth Circuit emphasized that its analysis "should not be read to preclude the victim of ongoing retaliation from filing multiple suits. If retaliation persists after the victim prevails in an initial suit . . . then *res judicata* would not affect access to the courts." *Id.*

Here, there is no way the claims based on the 2015 alleged conduct could have been adjudicated in the Elm Leasing Action. The alleged conduct did not occur until well after the case was

tried by a jury and a judgment was entered.  A fair reading of the present Complaint suggests that Defendants slowed their alleged racketeering activities so they could litigate their disputes in this Court.  But when they lost the prior actions, they resumed their alleged racketeering activities, causing new damages.  Under these circumstances, the Court declines to find that the new claims are barred by *res judicata*.  Defendants are not entitled to judgment on the pleadings on claims based on their alleged 2015 conduct related to the real estate holding trusts.

### 3.   Summary

*Res judicata* only bars (1) Eastern Property and SEE from re-litigating the claims they brought in the Trespass Action and (2) Van Gasken from re-litigating any claims against Loren Gill arising solely from the conduct giving rise to the Elm Leasing Action.

### B.   Motion to Dismiss Claims Not Barred by Res judicata

Defendants argue that even if Plaintiffs' RICO claims are not barred by *res judicata*, they should still be dismissed. First, Defendants contend that the RICO claims should be dismissed because the factual allegations do not support a RICO claim.  Defendants point out that several of Plaintiffs' factual allegations relate to the mailing or sending of litigation documents.  Plaintiffs concede that "absent an intent to deceive

the victim, the mailing of litigation documents, even perjurious ones, did not violate the mail-fraud statute." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 n.2 (11th Cir. 2004) (per curiam) (internal quotation marks omitted).  But Plaintiffs' RICO claims are not based entirely on the allegations regarding litigation documents.  The presence of these allegations does not justify dismissal of Plaintiffs' RICO claims.

Second, Defendants argue that the RICO allegations are so vague that they do not put Defendants on proper notice of what conduct Plaintiffs contend supports their claims.  When read in context, the Court is satisfied that the allegations in Plaintiffs' Complaint give Defendants sufficient notice of the basis for Plaintiffs' claims.

Finally, Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiffs did not comply with the Court's local rules on RICO Interrogatories.  Plaintiffs, however, have supplemented their RICO Interrogatories, and the Court finds that dismissal is not warranted on this ground.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (ECF No. 34) is granted as to (1) SEE and Eastern Property's claims against Loren Gill that are the same as the claims they brought in the Trespass Action and (2) Van Gasken's claims against Loren Gill that are based solely on

21

Defendants' 2011 conduct related to the real estate holding trust assets.  The motion is denied as to all other claims.

IT IS SO ORDERED, this 29th day of May, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA